

EPSTEIN
BECKER
GREEN

Attorneys at Law

David W. Garland
t 212.351.4708
f 212.878.8600
DGarland@ebglaw.com

July 28, 2026

**VIA ECF**

Honorable J. Paul Oetken
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2101
New York, NY 10007

> **Re:**    ***Marsh USA LLC v. Alliant Insurance Services, Inc., et al.***
> **Civil Action No. 25-cv-05470 (JPO)**
> **Letter-Motion to Compel Production**

Dear Judge Oetken:

Pursuant to Rule 3(D) of the Court's Individual Rules and Practices, Plaintiff Marsh USA LLC ("Marsh") submits this letter-motion to compel Defendant Alliant Insurance Services, Inc. ("Alliant") and Defendants Glenn Pelletiere and Colin Horgan (the "Individual Defendants") to produce documents responsive to Marsh's Third Set of Requests for Production (the "Third Request") and extend fact discovery for the limited purpose of allowing for such production. Defendants bring this motion now because Defendants only served their discovery responses which are the subject of this application on July 16, 2026 – the day before the discovery deadline.

### A.  Introduction

This is one of several cases where Alliant has targeted Marsh, interfered with Marsh's restrictive covenants with their former brokers, and unlawfully solicited and serviced Marsh's clients. Within the last eighteen months, two judges in this District have enjoined Alliant and its newly hired employees from engaging in similar behavior to that alleged in this case.[1]

---

[1] *See Marsh & McLennan Agency LLC v. Alliant Insurance Services, Inc.*, 25-CV-6936 (RA), 2025 WL 3442819, *17 (S.D.N.Y. Dec. 1, 2025) (Abrams, D.J.); *Marsh & McLennan Agency LLC v. Alliant Insurance Services, Inc.*, 1:24-cv-9914-MKV, 2025 WL 304500, *10 (S.D.N.Y. Jan. 27, 2025) (Vyskocil, D.J.).

Honorable J. Paul Oetken
July 28, 2026
Page 2

Here, while employed at Marsh, the Individual Defendants were the primary relationship brokers for numerous Marsh surety business clients. For several years Pelletiere was the primary Marsh broker for Dollar General. The Individual Defendants resigned from Marsh on January 24, 2025, and became employees of Alliant shortly thereafter. In the Amended Complaint, Marsh lays out how the Individual Defendants violated their one-year post-employment client non-solicitation and non-servicing contractual restrictions. During discovery, Alliant produced a March 20, 2025, text message sent by Pelletiere that certainly seems to confirm Pelletiere's solicitation of Dollar General in violation of his non-solicitation agreements with Marsh: *"**Just had a great call with dollar general! Think we have it. But don't want to jinx myself.**"*  Indeed, less than two weeks later, Dollar General transferred its surety business from Marsh to Alliant.

Defendants try to explain Pelletiere's text away by claiming that Thomas Rhatigan (a former Marsh employee without pending contractual restrictions) solicited Dollar General with no participation by Pelletiere. Alliant has used that strawman tactic before, trying to evade its new hires' contractual restrictions.[2] It seems highly unlikely, however, that Dollar General, which had such a close relationship with Pelletiere for several years, would suddenly move its business from Marsh to Alliant, just two months after Pelletiere became employed at Alliant, without Pelletiere's involvement. Alliant will likely point to a letter purportedly written by Dollar General's Adam Zager, but conspicuously absent from that letter is a specific denial that Pelletiere participated in soliciting Dollar General.

Stonewalling further disclosure, Defendants refused to produce any other documents demonstrating Pelletiere or Horgan communicating with Dollar General or other restricted clients during their one-year non-solicitation period. They also initially refused to produce text messages of Alliant's key executives who were involved in recruiting the Individual Defendants and Thomas Rhatigan, and in planning to go after Marsh's clients with whom the Individual Defendants had worked. Thus, on June 16, 2026, Marsh served the Third Request, seeking such documents.

### B.  The Discovery Responses At Issue

In their Responses and Objections served on July 16, 2026, Defendants refused to produce or even search for *any* responsive documents, objecting instead mainly on boilerplate "unduly burdensome" grounds.[3] On July 17, 2026, Marsh sent a deficiency letter (Exhibit A); by letter dated July 20, 2026, Defendants stood on their objections (Exhibit B)[4]; and by letter dated July 22, 2026, Marsh replied by narrowing the scope and time periods for various requests (Exhibit C). The parties conferred via videoconference on July 23, 2026, but were unable to resolve the discovery

---

[2] *See USI Ins. Servs. LLC v. Alliant Ins. Servs. Inc.*, No. CV-23-00192-PHX-SMB, 2025 WL 1179412, at *9 (D. Ariz. Apr. 23, 2025) (citing email reflecting that Alliant's new employee could not be "out front" due to "contractual restrictions" but to have "no fear who is pulling the strings").

[3] Such "meaningless boilerplate" objections do not justify withholding documents. *Fischer v. Forrest,* 2017 WL 773694, at 3* (S.D.N.Y. Feb. 28, 2017) (Peck, M.J.)

[4] Marsh timely served its Third Request, and Defendants' responses were due before the discovery cut-off. In their July 20, 2026 letter, Defendants erroneously contend that the Third Request "improperly attempts to shift discovery completion to beyond the Court-ordered deadline without leave of Court." (Ex. B, p. 2). That is not true, as the cases cited by Defendants involved discovery served *fewer* than 30 days before the cut-off.

Honorable J. Paul Oetken
July 28, 2026
Page 3

disputes presented in this letter-motion.[5] Thus, Marsh wasted no time in following up on Defendants' discovery failures and bringing this letter-motion before the Court.

### 1. Request No. 60 to Pelletiere and Request No. 61 to Horgan for Phone Billing Records

The Individual Defendants' personal phone billing records will show the numbers they called, including Marsh clients in violation of their contractual non-solicitation obligations. Accordingly, the Individual Defendants' personal phone billing records will likely provide evidence relevant to Pelletiere's contemporaneous proclamation explained above: "***Just had a great call with dollar general! …***" Because such records are indisputably relevant, Marsh served the following requests upon Pelletiere and Horgan:

> The monthly billing statements from January 24, 2024 through present for all mobile and landline phones used by Pelletiere [RFP 60; Horgan, RFP 61].

(Exhibits D and E). In response to the Individual Defendants' objections, Marsh limited the period from January 1, 2025 through January 31, 2026. The Individual Defendants could download these 13 months of phone billing records from their carriers' websites in less than an hour, so any claim of undue burden is baseless. Their relevance objections lack merit given (a) their solicitation is a central issue in the case as a general matter, (b) Pelletiere's "great call with dollar general!" as a specific matter, and (c) the Individual Defendants' privacy concerns are addressed by the protective order. Accordingly, their refusal to search for and produce the requested records is unjustified.

### 2. Request Nos. 4 to 59 to Alliant Seek Communications with Restricted Clients

While Defendants deny that Pelletiere and Horgan solicited or serviced former Marsh clients, Marsh is not required just to accept those denials. Marsh therefore served upon Alliant the following requests for communications and records of calls and meetings (if any):

> All communications (including text messages, instant messages, or similar communications (including but not limited to SMS, WhatsApp, iMessage, or any other messaging platform or application) from January 24, 2024 through the present between Alliant (including Aguirre, Cusack, and Dizdari), any Individual Defendant, Rhatigan, Diaz, and/or Manning on the one hand and [specific named clients] on the other hand. [Request Nos. 5 through 31]

> All records, including but not limited to call logs, usage data, billing statements, or similar documentation, and/or calendar entries, reflecting all phone calls or video calls or meetings (including but not limited to Zoom, FaceTime, WhatsApp, Microsoft Teams, Skype, or any other similar platform) from January 24, 2024 through present between Alliant (including Aguirre, Cusack, and Dizdar), and Individual Defendant, Rhatigan, Diaz, and/or Manning

---

[5] Request Nos. 1, 2, and 3 to Alliant were also the subject of dispute. (See Exhibits A, B, and C). Yesterday, July 27, 2026, Alliant agreed to search for and produce documents responsive to those requests. (Exhibit G). Marsh reserves its rights as to these requests until after this production has been made and reviewed.

Honorable J. Paul Oetken
July 28, 2026
Page 4

on the one hand, and [specific named clients] on the other, and all notes concerning any such calls or meetings. [Requests 32 through 59].

(Exhibit F). In response to Alliant's objections, Marsh limited the period to August 1, 2024 through January 24, 2026 (spanning Alliant's recruitment of Pelletiere and Horgan through their restrictive covenant periods – *i.e.*, the period during which impermissible client solicitation would have occurred), and limited the scope of Alliant employees to Pelletiere, Horgan, Manning, Diaz, and Aguirre (Aguirre being responsible for Alliant's new national commercial surety business, and who would have communicated to clients who at Alliant would service the client's business).

If Defendants' testimony that Pelletiere and Horgan did not solicit or service restricted clients is truthful, there should be few, if any, responsive documents, and so the requests would not be unduly burdensome. Alliant's refusal to search for responsive documents therefore suggests it is hiding something. Alliant is effectively preventing Marsh from testing the truth of the Individual Defendants' denials. That should not be allowed, especially given that Alliant and its employees have been repeatedly found by courts to have been untruthful. *See, e.g., Mt. W. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104 at *2 (Del. Ch. June 20, 2019) (Alliant submitted "affidavits [that] made expansive, absolutist representations about the absence of any solicitation efforts, which discovery revealed to be inaccurate."); *Aon Risk Services v. Cusack*, 946 N.Y.S.2d 65 (Table) (NY Cty. Sup. Ct. 2011) (enjoining Alliant and Cusack from violating restrictive covenants and finding their testimony "not credible"). Alliant has not identified any custodian, search term, or specific fact making compliance unduly burdensome, and so its refusal to search for and produce documents responsive to Request Nos. 4 through 59 is unjustified.

Accordingly, Marsh respectfully asks the Court to order Defendants to produce the discovery that is the subject of this letter motion and to extend fact discovery for that limited purpose.

Respectfully submitted,

By:    */s/ David W. Garland*
David W. Garland, Esq.
David J. Clark, Esq.
EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
(212) 351-4500
*Attorneys for Plaintiff*
*Marsh USA LLC*

cc: All Counsel of Record via ECF