UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARSH USA LLC,
Plaintiff,

-v-

ALLIANT INSURANCE SERVICES, INC., *et al.*,
Defendants.

25-CV-5470 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

On July 1, 2025, Plaintiff Marsh USA LLC ("Marsh") brought this action against Defendants Glenn Pelletiere, Colin Horgan, and Alliant Insurance Services, Inc. ("Alliant") (collectively, "Defendants"), asserting claims for breach of non-solicitation agreements, breach of fiduciary duty, aiding and abetting said breach of fiduciary duty, tortious interference with contract, and tortious interference with business relations. (*See generally* ECF No. 2.)

Two motions are now before the Court. First, Marsh moves the Court to reconsider its July 22, 2026 order. (*See* ECF No. 48.) Second, Marsh moves to re-open fact discovery in order to compel Defendants to produce documents responsive to two additional categories of requests. (*See* ECF No. 51.) For the reasons that follow, the Court grants Marsh's motion to reconsider, and the Court grants in part and denies in part Marsh's letter motion to re-open discovery and compel additional discovery requests from Defendants.

## I. Factual and Procedural Background

The Court assumes familiarity with the factual and procedural background of this case and recites background only insofar as it is relevant to the pending motions.

The Court entered a civil case management plan and scheduling order on September 25, 2025, which scheduled fact discovery to be completed by April 3, 2026. (ECF No. 25 at 2.) But

after the Court granted two extensions of time for the parties to complete discovery, the deadline to complete fact discovery was extended to July 17, 2026. (ECF Nos. 30, 32.)

On July 17, 2026, Marsh filed a letter-motion, seeking to extend fact discovery in order to compel Defendants to produce records from Alliant's building swipe card system. (ECF No. 42 at 1.) In support of that motion, Marsh explained that Defendants had produced a text message that Pelletiere sent to his daughter on March 20, 2025, which read: "Just had a great call with dollar general! Think we have it. But don't want to jinx myself." (*Id.* at 2.) But when Marsh deposed Pelletiere on July 7, 2026, Pelletiere testified that he did not have an individual call with Dollar General; rather, he only spoke to the Dollar General representative for "maybe 15 or 20 seconds" while passing through the office of a different, unrestricted Alliant employee, Thomas Rhatigan, who was soliciting Dollar General. (*Id.*) On July 10, 2026, Marsh requested that Defendants produce building swipe card records[1] "to test Pelletiere's story about the conversation with [Dollar General]." (*Id.*) After Defendants refused to produce those records, Marsh filed its letter-motion to compel. (*See generally id.*)

On July 22, 2026, the Court denied Marsh's letter-motion on the ground that the letter-motion and the underlying discovery requests were untimely. (ECF No. 44.) On July 27, 2026, Marsh filed a motion for reconsideration (ECF No. 48), accompanied by a memorandum of law in support of reconsideration (ECF No. 49), in which Marsh argues that good cause exists to re-open discovery. On August 3, 2026, Defendants filed an opposition to reconsideration. (ECF

[1] In its original letter-motion, Marsh argued that building swipe card records were responsive to earlier-filed, timely requests for production. (ECF No. 42 at 3-4.) In its July 22, 2026 order, the Court rejected that argument, as the earlier requests "were not made with sufficient particularity to be reasonably construed as requesting records of the building swipe card system." (ECF No. 44.) Marsh wisely does not re-raise this argument on reconsideration (*see* ECF Nos. 49, 54), as the earlier requests, broad as they may be, cannot be construed to request Alliant's building swipe card records.

No. 53.) On August 5, 2026, Marsh filed a reply in further support of reconsideration. (ECF No. 54.)

On July 28, 2026, Marsh filed another letter-motion to re-open discovery and compel Defendants to produce two additional sets of documents: (1) phone billing records of Pelletiere and Horgan; and (2) all communications between five Alliant employees—Pelletiere, Horgan, Nicholas Manning, Madison Diaz, and Orlando Aguirre—and *any* Alliant employee on the one hand, and twenty-eight restricted clients on the other. (ECF No. 51.) Marsh served those discovery requests on June 16, 2026. (*Id.* at 2.) Defendants filed a letter response opposing Marsh's discovery requests on July 31, 2026. (ECF No. 52.)

## II. Legal Standards

### A. Reconsideration

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citation and quotation marks omitted). To prevail, the movant must demonstrate either (i) an intervening change in controlling law; (ii) the availability of new evidence; or (iii) the need to correct clear error or prevent manifest injustice. *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580-81 (S.D.N.Y. 2013).

### B. Good Cause to Re-Open Discovery

"The decision whether to reopen discovery is within a district court's discretion." *Moroughan v. County of Suffolk*, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018). "Re-opening discovery should only be permitted for good cause and with this Court's consent." *United States v. Prevezon Holdings, Ltd.*, 236 F. Supp. 3d 871, 873 (S.D.N.Y. 2017). In determining whether good cause to re-open discovery exists, courts consider six factors: "(1) the imminence of trial;

(2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence." *Id.*

## III. Discussion

### A. Reconsideration of July 22, 2026 Order

The Court first takes up Marsh's request to revisit the Court's July 22, 2026 order denying Marsh's letter-motion to extend fact discovery and compel Defendants to produce Alliant's building swipe card records. (*See* ECF Nos. 42, 44, 48.)

As an initial matter, the Court can properly consider Marsh's argument that good cause exists to re-open discovery and compel production of Alliant's card swipe records. While reconsideration does not serve as a vehicle "to advance new arguments or legal theories that could have been raised earlier," *Mendez v. Aviles-Ramos*, No. 25-CV-1096, 2025 WL 2962007, at *1 (S.D.N.Y. Oct. 20, 2025), the Court concludes that Marsh's original letter-motion to compel production of Alliant's card swipe records sufficiently raised the argument that good cause exists to re-open discovery. Marsh's letter-motion sought "to extend the fact discovery period," and the good cause analysis governs the propriety of such an extension. (ECF No. 42 at 1.) *See* Fed. R. Civ. P. 16(b)(4). Further, the argument in the letter-motion correlates with several of the good cause factors, namely the relevance of the swipe card records, the diligence with which Marsh pursued the requested discovery, and the foreseeability of the need for additional discovery. (*See generally* ECF No. 42.)

Under the good cause analysis, the Court concludes that it overlooked Marsh's diligence in pursuing Alliant's swipe card records, and that good cause[2] exists to re-open discovery and compel production of such records. Under the good cause analysis, the weight of the factors favors re-opening discovery. First, trial is not scheduled and therefore not imminent, favoring re-opening discovery. Second, however, Defendants opposed Marsh's original letter-motion and oppose Marsh's motion for reconsideration, cutting against re-opening discovery. (*See* ECF Nos. 43, 53.) The third factor—prejudice to Alliant—favors re-opening discovery. Marsh's discovery requests are limited in scope, such that the requisite labor for Alliant to locate and produce records pertaining to its security swipe card system would be "relatively minor." *Weihai Lianqiao Int'l Coop Group Co., Ltd. v. A Base IX Co. LLC*, No. 21-CV-10753, 2024 WL 3498850, at *2 (S.D.N.Y. July 22, 2024).

The fourth and fifth factors—the diligence of Marsh in obtaining discovery and the foreseeability of the need for additional discovery—were overlooked by the Court and favor re-opening discovery. On diligence, Marsh promptly sought Alliant's swipe card records once it learned of such records' relevance. Pelletiere's deposition, taken on July 7, 2026, was the first instance in which the relevance of the physical presence of Pelletiere and Rhatigan became apparent. Marsh then served requests for production of Alliant's swipe card records only three

[2] In light of the legal arguments newly raised in Marsh's motion for reconsideration, the Court construes Marsh's prior letter-motion to extend fact discovery and compel Alliant's card swipe records as a motion to re-open discovery and analyzes good cause under the six-factor standard invoked by Marsh. (*See* ECF No. 49 at 7 n.2). Had the Court construed Marsh's letter motion as a motion to extend fact discovery, the Court would have granted Marsh's motion for reconsideration due to the existence of good cause for similar reasons. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) ("[T]he primary consideration [under Rule 16(b)(4)] is whether the moving party can demonstrate diligence. It is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors.").

days later, on July 10, 2026. (*See* ECF No. 42-1 at 2-3.) After Defendants refused to produce Alliant's swipe card records on July 15, 2026 (*see* ECF No. 42-2 at 2), Marsh sent further correspondence requesting production of the swipe card records on July 16, 2026 (*see* ECF No. 42-3 at 2). Marsh then filed its letter-motion with the Court on July 17, 2026. (*See* ECF No. 42.) The Court concludes that this timeline evinces Marsh's diligence in pursuing Alliant's swipe card records.

For similar reasons, foreseeability weighs in favor of re-opening discovery. Marsh could not have anticipated the relevance of Alliant's swipe card records until Pelletiere testified that he only spoke to the Dollar General representative while passing by Rhatigan's office. *See Weihai Lianqiao*, 2024 WL 3498850, at *2 (finding fifth factor "weigh[ed] heavily in favor of re-opening discovery" where "new information that was not foreseeable has come to light").

Finally, the sixth factor analyzes the likelihood that re-opening discovery would produce relevant evidence. The Court concludes that this factor weighs in favor of Marsh's request for Alliant's building swipe card records due to the likelihood that such records could fundamentally discredit or lend support to Pelletiere's testimony.

Marsh's motion for reconsideration is therefore granted, and Defendants are directed to produce the requested swipe card records.

**B. Motion to Compel and Re-Open Discovery**

The Court now turns to Marsh's letter-motion to re-open discovery and compel Defendants to produce (1) Pelletiere's and Horgan's phone records, and (2) any communications or records of communications between Defendants and any of twenty-eight restricted clients. (ECF No. 51.)

At the outset, both requests were timely. Defendants concede that Marsh made both requests "[o]n June 16, 2026, . . . 31 days before the close of fact discovery." (ECF No. 52 at 2.) Even under Defendants' case law, Marsh's requests were timely, as they were "made sufficiently inside the discovery period to allow for a response prior to the discovery cut-off date," which was not until July 17, 2026. *Gavenda v. Orleans County*, 182 F.R.D. 17, 20 (W.D.N.Y. 1997).

Under the good cause analysis, several factors apply equally to both sets of Marsh's discovery requests. The first factor weighs in favor of re-opening discovery for both requests because trial is not yet scheduled and therefore not imminent. Defendants oppose both requests, cutting against re-opening discovery. (ECF No. 52.) Regarding diligence and foreseeability, Marsh timely served the discovery requests at issue with a month left in discovery, such that Defendants had sufficient time to respond within the discovery period, lending support for re-opening discovery. On the whole, the Court finds that these shared factors lightly favor re-opening discovery, such that the weight of the remaining two factors—prejudice and relevance—guides the proper resolution of each of Marsh's discovery requests.

First, the Court concludes that there is good cause to re-open discovery to compel Defendants to produce the phone records of Pelletiere and Horgan. The central issue in this case is whether Pelletiere and Horgan solicited restricted clients in violation of non-solicitation agreements with Marsh. In response to an earlier request for production, Defendants produced the following text that Pelletiere sent to his daughter: "Just had a great call with dollar general! Think we have it. But don't want to jinx myself." (ECF No. 51 at 2; *see also* ECF No. 43-1 at 219.)[3] But in his deposition, Pelletiere claimed that he did not *individually* have a call with

[3] Page numbers in citations to deposition transcripts refer to the internal pagination. All other page numbers in citations to the record refer to the PDF pagination.

Dollar General; rather, Pelletiere testified that his text referenced a call between the Dollar General representative and another Alliant employee, Thomas Rhatigan. (ECF No. 43-1 at 219-20.) Pelletiere testified that he spoke to the Dollar General representative for "maybe all of 15, 20 seconds" and only to exchange pleasantries and well-wishes, not to solicit Dollar General to bring its business to Alliant. (*Id.* at 222.)

Pelletiere's text puts his phone usage at issue, such that production of the individual Defendants' phone records is likely to produce relevant information. Further, Marsh's request is narrow in scope and limited in time, such that complying with Marsh's request for billing records would not unfairly prejudice Defendants. Marsh requests "monthly billing statements . . . for all mobile and landline phones used by" the individual defendants and has limited the applicable time period from January 1, 2025 through January 31, 2026. (ECF No. 51 at 3.) Together, the minimal prejudice to Defendants and high likelihood of relevance demonstrate that good cause exists to re-open discovery and compel Defendants to produce the individual Defendants' phone records. *See Weihai Lianqiao*, 2024 WL 3498850, at *2-3 (re-opening discovery where "any prejudice to Defendants is relatively minor, as there is time to take two short depositions" and the sought discovery "is relevant and proportional to the needs of the case" (quotation marks omitted)).

Conversely, no good cause exists to compel production of "[a]ll communications []including text messages, instant message, or similar communications . . . between Alliant . . . , any Individual Defendant, [or] Rhatigan . . . on the one hand and [any of twenty-eight restricted clients] on the other hand." (ECF No. 51 at 3.) Defendants would face undue prejudice in combing through the records of communication for each of the five employees subject to Marsh's request in search of any communication with any of twenty-eight restricted clients. *See*

*Prevezon*, 236 F. Supp. 3d at 873 (denying motion to re-open discovery where discovery request "would substantially increase the burden borne by the parties in preparing for trial"). Further, Marsh's corporate representatives testified that they were aware of only three clients transitioning their business to Alliant after Pelletiere and Horgan left Marsh, and Marsh's damages are premised solely on those three clients. (ECF No. 52-2 at 93; ECF No. 52-3 at 127-28.) Only one of those three clients—Tilson Technology—is the subject of the discovery requests at issue. (*See* ECF No. 51-7 at 7, 28-29.)

The Court does, however, conclude that good cause exists to re-open discovery and compel Defendants to produce documents responsive to Marsh's requests for records of communications between the five identified Alliant employees and Tilson. The prejudice to Defendants is sufficiently reduced by greatly narrowing the scope of relevant communications to only those with Tilson, and the relevance of communications with Tilson is apparent given the fact that Marsh seeks damages related to Tilson. (*See* ECF No. 52-2 at 3; ECF No. 52-3 at 3.) The Court is aware that Defendants have already produced some responsive documents related to Tilson Technology in response to an earlier set of discovery requests. (*Id.*; ECF No. 52 at 1-2.) Defendants may, of course, refer to their prior production, but to the extent that Defendants have additional, unproduced records of communications between the five delineated employees and Tilson, Defendants shall produce such records to Marsh.

**IV. Conclusion**

For the foregoing reasons, Marsh's motion for reconsideration is GRANTED, and Marsh's letter-motion to re-open discovery is GRANTED in part and DENIED in part. Discovery is re-opened in this matter, and Defendants shall, by September 11, 2026, produce records responsive to Marsh's requests for (1) Alliant's swipe card records demonstrating

whether Pelletiere and Rhatigan were in Alliant's office on March 20, 2025; (2) monthly phone billing statements for Pelletiere and Horgan between January 1, 2025 and January 31, 2026; and (3) communications between five Alliant employees—Pelletiere, Horgan, Manning, Diaz, and Aguirre—and Tilson Technology.

The Clerk of Court is directed to close the motions at Docket Numbers 48 and 51.

SO ORDERED.

Dated: August 14, 2026
New York, New York

J. PAUL OETKEN
United States District Judge